35766-1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RYAN LORD, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-02689 |
| | ) | |
| JONATHAN LEO SMITH, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, Ryan Lord, professionally known as Ohmwrecker ("Lord"), by and through his attorneys, Huck Bouma PC, and for his Complaint against Defendant, Jonathan Leo Smith, professionally known as H2O Delirious (hereinafter "Smith"), states as follows:

## NATURE OF THE ACTION

1.     This is a diversity action asserting Illinois state law claims for false light, defamation *per se*, defamation, tortious interference with prospective economic advantage, and intentional infliction of emotional distress, as a result of Defendant's harassing conduct and publication of defamatory statements regarding Plaintiff that are false, harmful, and offensive to Plaintiff.

## PARTIES

2.     Plaintiff is a citizen and resident of the State of Illinois.

3.     Upon information and belief, Defendant is a resident of the State of North Carolina, who resides at 112 Roseberry Way, Holly Springs, NC 27540.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this is an action between Plaintiff, who is a citizen of the State of Illinois, and Defendant, who is a citizen of the State of North Carolina, and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

5.     Upon information and belief, Smith is subject to personal jurisdiction in the state of Illinois as he regularly transacts business as described below within the State of Illinois and committed tortious acts within the State of Illinois, including defamation, defamation *per se*, false light, intrusion upon seclusion, tortious interference with prospective economic advantage, and intentional infliction of emotional distress.

6.     Venue is proper in this District pursuant to 28 U.S.C § 1391 because many of the acts giving rise to Lord's claims occurred in this District.

## FACTUAL BACKGROUND

7.     Plaintiff is a video creator that produces, hosts, and publishes videos on streaming sites such as YouTube and Twitch.

8.     The content of Plaintiff's videos includes Plaintiff playing various video games, both by himself and with other video game streamers.

9.     Plaintiff is professionally known as "Ohmwrecker" and has purposely kept his image and real name private.

10.     Plaintiff has millions of fans and followers in the United States and around the world who follow his work and his social media profiles.

11.     Plaintiff has approximately 2.34 million subscribers on YouTube, 729,000 followers on twitter, and 492,000 followers on Twitch.

12. Defendant is also a video creator that produces, hosts, and publishes videos on streaming sites such as YouTube and Twitch.

13. The content of Defendant's videos also includes playing various video games, both by himself and with other video game streamers

14. Defendant is professionally known as "H2O Delirious."

15. Defendant has millions of fans and followers also around the world who follow his work and his social media profiles.

16. Defendant has approximately 13.3 million subscribers on YouTube, and 128,000 subscribers on Twitch.

17. Defendant's Twitter account had approximately 4.4 million followers prior to the account being suspended for violation of Twitter's rules.

18. In the past, Plaintiff and Defendant have streamed together and uploaded collaborative videos including each other.

19. Plaintiff and Defendant are in the same line of business and share a substantial amount of mutual followers.

20. Prior to March of 2021, Plaintiff heard allegations of Defendant being a pedophile.

21. When Plaintiff confronted Defendant about these allegations, Defendant denied the female involved was a minor and falsely stated that a different adult female was the subject of the allegations.

22. In March of 2021, Plaintiff spoke to the individual Defendant identified, and found out that a different individual was the subject of the allegations against Defendant and that individual was a minor at the time of the sexual interactions with Defendant. She also informed

Plaintiff about Defendant having sexual interactions with other minors and releasing revenge porn against her.

23.     On March 31, 2021, Plaintiff shared with a private group of mutual friends that this individual had such allegations against Defendant.

24.     In April of 2021, Defendant learned through the group of friends that Plaintiff discussed these allegations and began deleting thousands of tweets.

25.     In April of 2021, Defendant contacted Plaintiff denying the allegations regarding the sexual interactions with minors. As it was clear that Defendant was lying, Plaintiff blocked Defendant on social media accounts.

26.     In retaliation, Defendant began a malicious campaign to paint Plaintiff in a false light in the online streaming community and destroy Plaintiff's reputation.

27.     Upon information and belief, Defendant became obsessed with stalking and defaming Plaintiff and causing him severe emotional distress.

28.     Upon information and belief, Defendant has created numerous new accounts under false names ("Fake Profiles") to harass Plaintiff and to post defamatory statements about Plaintiff.

29.     On May 16, 2021, Twitter user Ryan8399330784, suspected to be Defendant, posted threatening to expose a compromising video of Plaintiff and a woman from 16 years prior.

30.     On May 17, Twitter user Hopper981, suspected to be Defendant began direct messaging Plaintiff's Twitter followers the following statement: "He has a released sex tape that he made long ago. He received so much hate from and phone calls because they said she was underage. He is not a good person."

31.    On May 23, 2021 Plaintiff engaged in an interview on a YouTube channel called DramaAlert and mentioned that he had heard allegations of Defendant having sexual engagements with minors and releasing revenge porn.

32.    In response, Defendant posted false and defamatory statements to his 4.4 million follower audience on his main Twitter account regarding Plaintiff.

33.    On May 23, 2021 Defendant published the following on his Twitter account:

a.    "Screw Ohm that manipulative piece of shit. He's not the saint he claims. All his lies and twists because 2 groups decided they didn't want to play games with him. Allegedly did this same thing to Markiplier…"

b.    "constantly had Ohm in my messages everyday with some crazy questions and paranoia or blaming me when it wasn't my game sessions. Because people didn't like him. And this is what he does…"

c.    Defendant posted several screenshots of edited conversations with Plaintiff and baselessly stated Plaintiff was engaged in "blackmailing" Defendant.

34.    On May 26, 2021, Defendant published the following on his Twitter account:

a.    "Ohm edits his own videos and saves things he can use against 'friends' later on. As you can tell from his last tweets. Stay away from him is my opinion."

b.    "Ohm is currently showing all creators and streamers why you should not play with ohmwrecker. He will save everything. No matter what stay away from him!"

c.    "This is Ohm. He's Conniving, petty, and completely obsessed with us. I just want him to leave me and my family alone."

    d.   "You haven't even seen the cartoonz group side of craziness. I'm sure everyone has a Book of his ranting in their DMs that he's played with. No matter what he is not someone to connect with in my own opinion."

    e.   Defendant posted "you get the picture of how crazy this guy is" with a screenshot of a conversation with Plaintiff where Defendant's statements were deleted so that it appeared Plaintiff was talking to himself.

35.    Soon after, beginning in May of 2021 several women approached Plaintiff regarding Defendant's relationships with them as minors.

36.    Specifically, the females advised Plaintiff that Defendant had sexual exchanges with them, including being groomed and manipulated into sending Defendant nude photos, videos, and video chats while they were minors.

37.    These individuals provided Plaintiff with evidence to support their claims, including their reports submitted to the FBI.

38.    On June 8, 2021 Defendant published the following on his Twitter account:

    a.   "Stop harassing people you don't know asking questions about me. You're scaring people with your manipulative speech pattern."

    b.   "He's DMing people he doesn't know to get any info he can try to hurt people with. They said he sounded so manipulative."

39.    Defendant continued posting blatantly defamatory statements regarding Plaintiff and statements to portray Plaintiff in a false light.

40.    On June 18, 2021, Twitter user Ohmlied, later renamed to DMme4Truth, confirmed to be Defendant, posted the following:

    a. Plaintiff "was getting Death threat calls about a Sex tape he leaked on a torrent site, They were saying the girl he had sex with was underage. Look it up! He tried so hard to hide the tape."

    b. "I'm telling anyone who tweets to him!"

    c. "Ohmwrecker manipulated everyone!"

41. On July 13, 2021 Plaintiff, through his counsel, sent a cease and desist letter to Defendant informing that Defendant's actions were inflicting severe emotional distress and promoting harassment of Plaintiff and persons related to Plaintiff. The letter demanded that Defendant do the following:

    a. Immediately cease and desist from publishing or republishing any defamatory statements regarding Plaintiff, including engaging in any direct messages or chats with such statements;

    b. Immediately withdraw and retract every defamatory statement Defendant posted regarding Plaintiff and publicly clarify that such statements were false;

    c. Immediately cease and desist from publishing private information regarding Plaintiff and persons related to Plaintiff;

    d. Immediately cease and desist from promoting harassment of Plaintiff; and

    e. Publish a statement instructing Smith's fans to immediately cease threatening Plaintiff and persons related to Plaintiff.

42. The letter specified that the aforementioned demands applied to accounts created by Defendant under false names.

43.     The letter also included a demand to preserve evidence, including all documents, communications, social media postings, direct messages, and social media and messaging accounts created by Defendant relating to the claims referenced by Plaintiff.

44.     Defendant disregarded these demands and continued his campaign of stalking, defamation, and harassment against Lord.

45.     Defendant also continued to delete evidence, including posts, messages, and accounts.

46.     On July 24, 2021, Twitter user TheTruth03927, suspected to be Defendant, posted fabricated "screenshots" of messages from Plaintiff to paint Plaintiff as a predator using blackmail to obtain nude photos from minor females. Some examples of these fabricated messages are as follows:

    a.  "for a 15 year old you have a nice body."

    b.  "you have to make me feel better now. You know the rules send the photos. No. actually send a video this time. I want to hear your moans. Moan my name as you finger your tight pussy. It will stop my depression and I won't want to die anymore. Fucking do it. Or should I send the other photos to your school?"

47.     On August 12, 2021, Twitter user Birdwatcher989, confirmed to be Defendant, posted "Allegedly [Plaintiff] uploaded porn on a torrent site and people found out it was his. He then received phone calls and harassment stating the girl in the video was underage."

48.     On August 13, Twitter user Birdwatcher988, confirmed to be Defendant, posted the following:

    a.  "If you dig more into that sex tape story you will find alleged allegations that she was under age in the tape."

    b. "You DO know he also has had alleged allegations that he has a sex tape that was underaged on a torrent website? Careful with who you defend."

49.     Upon information and belief, on September 2, 2021, Defendant emailed several popular YouTube drama channels from stormsusan455@yahoo.com with the following statements:

    a. "Ohmwrecker is sick, sick, sick! And always has been. And he is so obsessed with people he won't leave them alone. Sometimes for over a decade!"

    b. "Ohmwrecker in 2003-2005 was active on many unsavory forums," falsely implying Plaintiff was on pedophile forums.

    c. "In 2005 he was accused of making and threatening to use revenge porn against his ex girlfriend, goose. Goose was believed to be underaged at the time. He was accused of using the photos and videos he made of her and spreading them on torrent sites."

50.     On October 18, 2021, Twitter user Pizzapirate5, confirmed to be Defendant, was direct messaging Plaintiff's followers the following:

    a. An image with Plaintiff's face on a poster labeled "anatomy of a manipulator" with various descriptions of manipulative behavior.

    b. Statement saying Plaintiff released a sex tape as revenge porn and saying "the video appears to be real also. The Ohm sex tape is out there."

51.     Upon information and belief, Smith published the aforementioned posts without privilege or justification.

52.     Defendant's aforementioned statements are false regarding Plaintiff 1) having committed blackmail, 2) releasing revenge porn, 3) having sexual relations with a minor, 4)

uploading a sex tape with a minor 5) having police reports against Plaintiff for stalking, and 6) stalking Defendant.

53.    Upon information and belief, Defendant knew or should have known that the aforementioned statements were false.

54.    Upon information and belief, the aforementioned defamatory statements were made and published by Defendant with actual malice, i.e., with knowledge that the statements were false or with reckless disregard for the fact that they were false.

55.    Twitter conducted its own investigation and several suspected Fake Profiles and Defendant's main Twitter account were banned and taken down for violating Twitter's rules.

56.    A representative of Twitter confirmed that several of the Fake Profiles were created by Defendant.

57.    Upon information and belief, Defendant recruited his girlfriend and mother of his children, Liz Katz, to also target Lord on her social media platforms with the same disparaging and defamatory statements regarding Plaintiff.

58.    Liz Katz is a model and former adult film actress with a large social media following. She has approximately 1.2 million followers on Instagram, 692,200 followers on Twitter, and 371,000 subscribers on YouTube.

59.    On November 8, 2021 Liz Katz posted a YouTube video attempting to minimize Defendant's behavior and confirmed that several of the Fake Profiles were created by Defendant and used to target Lord, including Ohmlied, Birdwatcher989, Birdwatcher988, and Pizzapirate5.

60.    On November 8, 2021, Defendant publicly commented on YouTube user TJV's live stream stating "I want someone to go find ohms sex tape" and "Ask ohm about the police

reports he's received long ago for stalking." TJV has approximately 81,500 subscribers and the live-stream video has approximately 17,700 views.

61.     Plaintiff has never received any police reports for stalking and has never released revenge porn or had sexual relations with a minor.

62.     On January 25, 2022, Twitter user Delirious_not, suspected to be Defendant, posted "Oh [Defendant] was only banned because he was showing people your past. ;) but you the internet Karen reported him because you don't want people knowing your own past of being a racist and talking in pedo chats on old forums and releasing a sex tape when someone wouldn't talk to you."

63.     The actions of Defendant set forth in this Complaint demonstrate malice, egregious defamation, and insult. Such actions or omissions by Defendants were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

64.     The aforementioned defamatory statements published by Defendant have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and severe emotional distress.

65.     The aforementioned defamatory statements published by Defendant have also caused damage to Plaintiff's reputation and character within his profession and industry, including but not limited to among his fans and with prospective business relations such as sponsors.

66.     The aforementioned defamatory statements published by Defendant have negatively impacted Plaintiff's reputation in the streaming community and deterred the streaming community from associating with him.

67.     As a result of Defendant's conduct, Plaintiff has lost many sponsorship opportunities and collaboration opportunities with other streamers. Many of Plaintiff's business partners and friends now refuse to collaborate with Plaintiff due to Defendant's defamatory and degrading statements which paint Plaintiff in a false light.

68.     Plaintiff has also lost a significant amount of subscribers, followers, viewership, and income due to Defendant's conduct.

69.     Additionally, Defendant's conduct has caused many death threats and threats of violence towards Plaintiff and persons related to Plaintiff, causing Plaintiff to fear for his safety.

70.     As of this day Defendant has not issued any sort of retraction or repudiation of the defamatory and damaging statements.

## COUNT I
### (False Light)

71.     Plaintiff repeats and realleges by reference the allegations in Paragraphs 1 through 71 as if fully set forth herein.

72.     Upon information and belief, by publishing and communicating the false allegations in the manner described above, Defendant portrayed Plaintiff in a false light intending to cause Plaintiff injury.

73.     Defendant intentionally intruded upon the solitude and/or seclusion of Plaintiff and his private affairs and/or concerns, and this intrusion, which falsely portrays Plaintiff as manipulative, a predator, a pedophile, a criminal, and lacking integrity in his profession.

74.     This portrayal of Plaintiff is highly offensive to a reasonable person.

75.     Defendant's aforementioned statements are false regarding Plaintiff 1) being manipulative, 2) lacking integrity in his profession, 3) being a predator, 4) being a pedophile, 5) having committed blackmail, 6) releasing revenge porn, 7) having sexual relations with a minor, 8) uploading a sex tape with a minor 9) having police reports against Plaintiff for stalking, and 10) stalking Defendant.

76.     Upon information and belief, Defendant knew these statements to be false or made no attempt to verify the veracity of any statements made regarding Plaintiff.

77. Upon information and belief, Defendant knew or should have known these statements would create a false impression about Plaintiff and acted in reckless disregard of the truth.

78. Upon information and belief, Defendant's false statements were generated and communicated with actual malice, total disregard for the truth, and in the complete absence of any special privilege.

79. Defendant's statements were intended to characterize Plaintiff as dangerous and to impute a want of integrity in Plaintiff's profession and business.

80. Defendant's statements placed Plaintiff in a false light in the community.

81. Defendant's statements were intended to and have caused harm to Plaintiff's reputation in the very tight knit video game streaming community.

82. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

83. Upon information and belief, Defendant did not engage in any of the aforementioned conduct out of any sincere or proper motive, or in any manner governed by reasonable and ministerial conduct according to any job duty, but did so knowingly, willfully, and oppressively, with full knowledge of the adverse effects that his actions would have on Plaintiff, and with willful and deliberate disregard for the consequences. Accordingly, Plaintiff is entitled to recover punitive damages from Defendants in an amount to be determined at trial.

84. Upon information and belief, the actions or omissions of Defendant set forth in this Complaint demonstrate malice, egregious defamation, and insult.

85. Such actions or omissions by Defendant were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

86.     Plaintiff is entitled to general and special damages for the following harm: emotional distress and impairment to his name, character, and reputation. The foregoing resulted in a significant reduction in Plaintiff's viewership, sponsorship opportunities collaboration opportunities, and income.

87.     Plaintiff requests an award of punitive damages and attorneys' fees beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

88.     Plaintiff requests an order permanently enjoining Defendant and all his respective agents, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority Defendant, or in concert or participation with Defendant from: making, disseminating, broadcasting, or publishing any statements that Plaintiff 1) being manipulative, 2) lacking integrity in his profession, 3) being a predator, 4) being a pedophile, 5) having committed blackmail, 6) releasing revenge porn, 7) having sexual relations with a minor, 8) uploading a sex tape with a minor 9) having police reports against Plaintiff for stalking, and 10) stalking Defendant.

89.     Additionally, Plaintiff requests an order requiring Defendant remove in full all posts and messages with defamatory and disparaging statements made regarding Plaintiff.

## COUNT II
### (Defamation Per Se)

90.     Plaintiff repeats and realleges by reference the allegations in Paragraphs 1 through 90 as if fully set forth herein.

91.     Upon information and belief, as set forth above, Defendant has intentionally falsely portrayed Plaintiff as a pedophile, a criminal, and lacking integrity in his profession, and this portrayal is highly offensive to a reasonable person.

92.     Upon information and belief, Defendant knew these statements to be false.

93.     Upon information and belief, Defendant made no attempt to verify the veracity of these statements made regarding Plaintiff.

94.     Upon information and belief, Defendant's false statements were generated and communicated with actual malice, total disregard for the truth, and in the complete absence of any special privilege.

95.     Defendant's statements were intended and have caused harm to plaintiffs' reputation in the very tight knit video game streaming community.

96.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

97.     Upon information and belief, Defendant did not engage in any of the aforementioned conduct out of any sincere or proper motive, or in any manner governed by reasonable and ministerial conduct according to any job duty, but did so knowingly, willfully, and oppressively, with full knowledge of the adverse effects that his actions would have on Plaintiff, and with willful and deliberate disregard for the consequences. Accordingly, Plaintiff is entitled to recover punitive damages from Defendants in an amount to be determined at trial.

98.     Upon information and belief, the actions or omissions of Defendant set forth in this Complaint demonstrate malice, egregious defamation, and insult.

99.     Such actions or omissions by Defendant were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

100.    Plaintiff is entitled to general and special damages for the following harm: emotional distress and impairment to his name, character, and reputation. The foregoing resulted in a significant reduction in Plaintiff's viewership, sponsorship opportunities, and income.

101.    Plaintiff requests an award of punitive damages and attorneys' fees beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

102.    Additionally, Plaintiff requests an order permanently enjoining Defendant and all his respective agents, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority Defendant, or in concert or participation with Defendant from: making, disseminating, broadcasting, or publishing any statements that Plaintiff 1) lacking integrity in his profession, 2) being a pedophile, 3) having committed blackmail, 4) releasing revenge porn, 5) having sexual relations with a minor, 6) uploading a sex tape with a minor 7) having police reports against Plaintiff for stalking, and 8) stalking Defendant.

103.    Additionally, Plaintiff requests an order requiring Defendant remove in full all posts and messages with defamatory and disparaging statements made regarding Plaintiff.

## COUNT III
### (Defamation)

104.    Plaintiff repeats and realleges by reference the allegations in Paragraphs 1 through 103 as if fully set forth herein.

105.    Upon information and belief, as set forth above, Defendant has intentionally falsely portrayed Plaintiff as a pedophile, a criminal, and lacking integrity in his profession, and this portrayal is highly offensive to a reasonable person.

106.    Upon information and belief, Defendant knew these statements to be false.

107.    Upon information and belief, Defendant made no attempt to verify the veracity of these statements made regarding Plaintiff.

108. Upon information and belief, Defendant's false statements were generated and communicated with actual malice, total disregard for the truth, and in the complete absence of any special privilege.

109. Defendant's statements were intended and have caused harm to plaintiffs' reputation in the very tight knit video game streaming community.

110. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

111. Upon information and belief, Defendant did not engage in any of the aforementioned conduct out of any sincere or proper motive, or in any manner governed by reasonable and ministerial conduct according to any job duty, but did so knowingly, willfully, and oppressively, with full knowledge of the adverse effects that his actions would have on Plaintiff, and with willful and deliberate disregard for the consequences. Accordingly, Plaintiff is entitled to recover punitive damages from Defendants in an amount to be determined at trial.

112. Upon information and belief, the actions or omissions of Defendant set forth in this Complaint demonstrate malice, egregious defamation, and insult.

113. Such actions or omissions by Defendant were undertaken with reckless disregard of the falsity of the speech and its effects on Plaintiff.

114. Plaintiff is entitled to general and special damages for the following harm: emotional distress and impairment to his name, character, and reputation. The foregoing resulted in a significant reduction in Plaintiff's viewership, sponsorship opportunities, and income.

115. Plaintiff requests an award of punitive damages and attorneys' fees beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

116.     Additionally, Plaintiff requests an order permanently enjoining Defendant and all his respective agents, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority Defendant, or in concert or participation with Defendant from: making, disseminating, broadcasting, or publishing any statements that Plaintiff 1) lacking integrity in his profession, 2) being a pedophile, 3) having committed blackmail, 4) releasing revenge porn, 5) having sexual relations with a minor, 6) uploading a sex tape with a minor 7) having police reports against Plaintiff for stalking, and 8) stalking Defendant.

117.     Additionally, Plaintiff requests an order requiring Defendant remove in full all posts and messages with defamatory and disparaging statements made regarding Plaintiff.

### COUNT IV
### (Tortious Interference with Prospective Economic Advantage)

118.     Plaintiff repeats and realleges by reference the allegations in Paragraphs 1 through 116 as if fully set forth herein.

119.     Plaintiff had a reasonable expectation of entering into a valid business relationship with various sponsors and other video game streamers.

120.     Defendant knew Plaintiff had valid business relationships with notable sponsors such as Branded Entertainment Network Company, Ubisoft Company, Electronic Arts Inc., Epic Games Inc., and Warner Bros. Games.

121.     Defendant knew of Plaintiff's expectancy to enter into such business relationships.

122.     Defendant was aware that Plaintiff expected such business relationships as Defendant is in the same line of business as Plaintiff and is familiar with the video game streaming business model and sponsorship process.

123.     Defendant has also worked jointly with Plaintiff and certain streamers and sponsors in the past, including Branded Entertainment Network Company, and Epic Games Inc.

124.    Plaintiff also informed Defendant regarding his expectancy of his business relationships with the aforementioned sponsors.

125.    Defendant purposefully interfered with Plaintiff's legitimate business expectancies and prevented such relationships from ripening into a valid business relationship through his defamatory and false statements regarding Plaintiff 1) being manipulative, 2) lacking integrity in his profession, 3) being a predator, 4) being a pedophile, 5) having committed blackmail, 6) releasing revenge porn, 7) having sexual relations with a minor, 8) uploading a sex tape with a minor 9) having police reports against Plaintiff for stalking, and 10) stalking Defendant.

126.    Upon information and belief, Defendant directly contacted at least one sponsor, several video game streamers, and many of Plaintiff's followers with the aforementioned defamatory and degrading statements regarding Plaintiff, painting Plaintiff in a false light in order to interfere with Plaintiff's reasonable expectations of business relationships.

127.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

128.    Plaintiff is entitled to general and special damages for the following harm: emotional distress and impairment to his name, character, and reputation. The foregoing resulted in a significant reduction in Plaintiff's viewership, sponsorship opportunities, and income.

129.    Plaintiff requests an award of punitive damages and attorneys' fees beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

130.    Additionally, Plaintiff requests an order permanently enjoining Defendant and all his respective agents, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority Defendant, or in concert or participation

with Defendant from: making, disseminating, broadcasting, or publishing any statements that Plaintiff 1) being manipulative, 2) lacking integrity in his profession, 3) being a predator, 4) being a pedophile, 5) having committed blackmail, 6) releasing revenge porn, 7) having sexual relations with a minor, 8) uploading a sex tape with a minor 9) having police reports against Plaintiff for stalking, and 10) stalking Defendant, as well as an order requiring Defendant remove in full all defamatory and disparaging statements made regarding Plaintiff.

## COUNT V
### (Intentional Infliction of Emotional Distress)

131.    Plaintiff repeats and realleges by reference the allegations in Paragraphs 1 through 131 as if fully set forth herein.

132.    As set forth above, Defendant's conduct is extreme and outrageous.

133.    Defendant knew that his conduct inflict severe emotional distress, or knew that there is at least a high probability that his conduct will cause severe emotional distress.

134.    At all relevant times herein, Defendant was aware that Plaintiff suffers from depression and anxiety disorders, including panic disorder with agoraphobia.

135.    Defendant was aware that Plaintiff's career in streaming has enabled him to have a career while working from home.

136.    Despite knowing Plaintiff suffers from debilitating anxiety, Defendant began a malicious campaign to damage and destroy Plaintiff's reputation and career and to cause him severe emotional distress.

137.    Defendant has engaged in outrageous behavior including, but not limited to, promoting harassment and stalking of Plaintiff and persons related to Plaintiff to his 4.4 million Twitter followers, falsely accusing Plaintiff of being a pedophile, a criminal, and lacking integrity in his profession, and taunting Plaintiff publicly regarding his anxiety disorders.

138.     Upon information and belief, Defendant encouraged his fans threats of violence against Plaintiff and even repeatedly assisted his fans getting access to Plaintiff's home address.

139.     As a result, Plaintiff has received threats of violence against himself, his dog, and his girlfriend.

140.     One of Defendant's followers even stated that he was contemplating if it was worth going to prison for going after Plaintiff.

141.     Defendant's behavior and portrayal of Plaintiff is highly offensive to a reasonable person.

142.     Plaintiff has suffered severe emotional distress due to Defendant's aforementioned conduct.

143.     Defendant's conduct is the direct and proximate cause of Plaintiff's severe emotional distress.

144.     Defendant's conduct has significantly increased Plaintiff's depression anxiety and symptoms from the disorders.

145.     Plaintiff has also suffered intense feelings of humiliation and despair resulting from Defendant's conduct.

146.     Plaintiff now is in constant fear for his safety and the safety of persons associated with Plaintiff.

147.     Plaintiff now rarely leaves his home due to his increased anxiety and fear of his safety.

148.     Plaintiff's ability to sleep has been impaired to an extreme degree, with Plaintiff being unable to sleep occasionally for several days at a time.

149.    Plaintiff's severe emotional distress caused by Defendant's conduct has also impaired his ability to work and post content as frequently as he did prior to Defendant's attacks on Plaintiff.

150.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

151.    Plaintiff is entitled to general and special damages for the following harm: severe emotional distress and impairment to his name, character, and reputation. The foregoing resulted in a significant reduction in Plaintiff's viewership, sponsorship opportunities, and income.

152.    Plaintiff requests an award of punitive damages and attorneys' fees beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct.

153.    Additionally, Plaintiff requests an order permanently enjoining Defendant and all his respective agents, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority Defendant, or in concert or participation with Defendant from: making, disseminating, broadcasting, or publishing any statements that Plaintiff 1) being manipulative, 2) lacking integrity in his profession, 3) being a predator, 4) being a pedophile, 5) having committed blackmail, 6) releasing revenge porn, 7) having sexual relations with a minor, 8) uploading a sex tape with a minor 9) having police reports against Plaintiff for stalking, and 10) stalking Defendant, as well as an order requiring Defendant remove in full all defamatory and disparaging statements made regarding Plaintiff.

## **CONCLUSION**

WHEREFORE, Ryan Lord respectfully requests that this Honorable Court enter judgment in favor of Ryan Lord and against Jonathan L. Smith and enter an order:

A. Awarding Plaintiff damages in amounts pertaining to each to be determined at trial, but not less than $75,000, including general, special, consequential, actual, statutory, and punitive damages;

B. Awarding attorney's fees, court costs and expenses incurred by Ryan Lord in connection with prosecution of this matter;

C. Permanently enjoining Defendant and all his respective agents, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority Defendant, or in concert or participation with Defendant from: making, disseminating, broadcasting, or publishing any statements that Plaintiff 1) being manipulative, 2) lacking integrity in his profession, 3) being a predator, 4) being a pedophile, 5) having committed blackmail, 6) releasing revenge porn, 7) having sexual relations with a minor, 8) uploading a sex tape with a minor 9) having police reports against Plaintiff for stalking, and 10) stalking Defendant.

D. Ordering Defendant to remove in full all posts and messages with defamatory and disparaging statements made regarding Plaintiff.; and

E. Awarding such other and further relief as is equitable and just.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all claims for relief and issues triable by jury.

Respectfully submitted,

Ryan Lord

By:    /s/ Thomas A. Christensen
       One of his Attorneys

Thomas A. Christensen (6215881)
Alexandra N. Prejzner (6336585)
HUCK BOUMA PC
1755 S. Naperville Road, Suite 200
Wheaton, Illinois 60189
(630) 221-1755
tchristensen@huckbouma.com
aprejzner@huckbouma.com