09:20:40

1    UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF ILLINOIS
2         EASTERN DIVISION

3

4    RYAN LORD,                    )

5              Plaintiff,          )

6         vs.                      )    No. 22 CV 2689

7    JONATHAN LEO SMITH,           )    Chicago, Illinois
                                   )    December 20, 2023
8              Defendant.          )    9:41 o'clock a.m.

9

10        TRANSCRIPT OF PROCEEDINGS - HEARING
       BEFORE THE HONORABLE JEREMY C. DANIEL

11

12   APPEARANCES:

13

14   For the Plaintiff:      MR. MAX B. GOODMAN
                             AMUNDSEN DAVIS
15                           150 North Michigan Avenue
                             Chicago, Illinois 60601
16                           312-894-3200
                             mgoodman@amundsendavis.law
17

18   For the Defendant:      MR. PIERRE B. PINE
                             McPHERSON LLP
19                           1900 Avenue of the Stars
                             Los Angeles, California 90067
20                           310-553-8833
                             ppine@mcpherson-llp.com
21

22   Court Reporter:         FEDERAL OFFICIAL COURT REPORTER
                             MS. KRISTA BURGESON
23                           219 South Dearborn Street
                             Chicago, Illinois 60604
24                           312-435-5567
                             krista_burgeson@ilnd.uscourts.gov
09:41:13  25
09:41:13

09:41:14  1    THE CLERK:  22 C 2689, Lord versus Smith.

09:41:17  2    Please state your name for the record and the party

09:41:20  3  that you represent.

09:41:22  4    MR. GOODMAN:  Good morning, Your Honor.

09:41:24  5    MR. PINE:  Good morning, Your Honor.

09:41:25  6    MR. GOODMAN:  Max Goodman for the plaintiff, Ryan

09:41:28  7  Lord, Your Honor.

09:41:29  8    THE COURT:  Good morning, Mr. Goodman.

09:41:31  9    On the phone?

09:41:32  10   MR. PINE:  Yes, good morning, Your Honor.  Pierre

09:41:35  11  Pine on behalf of the defendant, Jonathan Smith.

09:41:38  12   THE COURT:  Good morning to you both.

09:41:41  13   I have a pending motion to compel responses to

09:41:47  14  requests to admit, and interrogatory Number 7, filed by the

09:41:52  15  plaintiff.  I did see the response from the defense with -- I

09:42:01  16  should say the response, and my recollection is it has

09:42:05  17  technical arguments that I will ask Mr. Goodman to respond to,

09:42:10  18  but I do intend to reach the substance of the matter because I

09:42:14  19  see no reason to delay.

09:42:19  20   So Mr. Goodman, why no meet and confer?

09:42:22  21   MR. GOODMAN:  Your Honor, we actually did have a meet

09:42:25  22  and confer.  We had a meet and confer specifically on November

09:42:28  23  22nd.  We then had an email memorialization of that meet and

09:42:32  24  confer on 11-29, and I do have a copy of that email here

09:42:32  25  today.

09:42:37  1      That email was written by Pierre Pine, and just
09:42:39  2  reading very briefly, I wanted to -- he responded on November
09:42:43  3  29th, I wanted to let you know that we intend to stand on our
09:42:47  4  responses and objections to the amended responses to the
09:42:50  5  requests for admission that we previously provided for all
09:42:53  6  of the reasons we discussed during our meet and confer Zoom
09:42:57  7  call.
09:42:57  8      Very briefly, I will address just their other points
09:43:00  9  in their response to the notice.
09:43:02  10      Specifically, I think that the reason -- and I
09:43:05  11  apologize to the Court if I misconstrued your standing orders.
09:43:09  12  I had thought that it was that I was to include a proposed
09:43:12  13  briefing schedule on a motion only if it was a certain type of
09:43:16  14  a motion, if there was some ambiguity as to whether or not
09:43:20  15  they would be contesting it.  Clearly if we did not consider
09:43:24  16  this motion to be that we, of course, assumed they would be
09:43:27  17  contesting this, because it is a motion regarding sufficiency
09:43:30  18  of discovery responses.
09:43:32  19      In their response, they did propose a briefing
09:43:34  20  schedule.  It sounds like Your Honor does not want this issue
09:43:38  21  briefed, which we are fine with.
09:43:40  22      But I guess then the other quick points were I
09:43:45  23  believe they had an argument about the length.  They are
09:43:47  24  correct.  We technically did violate the local rule, I believe
09:43:51  25  it is 7.1, concerning the length.  However, the spirit of that

09:43:55 1 rule of course is concerning text.  Our motion, most notably

09:44:02 2 on Pages 15 and 16 of our motion, are full pages that include

09:44:05 3 embedded images, no text there.  And the text of our motion is

09:44:09 4 within the 15 pages allotted by the Court, I believe.

09:44:13 5     I think those were the main points.  But I think they

09:44:17 6 just meant to raise them as objections, however I don't want

09:44:20 7 to put words in counsel's mouth.

09:44:22 8     THE COURT:  I appreciate your explanation.  I

09:44:26 9 apologize to both parties if my case procedures aren't a model

09:44:30 10 of clarity.  Just know they are inspired by reasonableness.

09:44:36 11 So if the parties think they are going to fight about it and

09:44:40 12 you don't want to show up on a notice hearing just to set a

09:44:42 13 schedule, include a briefing schedule and I will enter the

09:44:43 14 briefing schedule.  That is my intent behind it.  So I don't

09:44:50 15 take issue.

09:44:51 16     It sounds like the parties are at an impasse, and as

09:44:55 17 far as briefing, I don't need lots of pages on discovery

09:45:00 18 motions because there is not really much to be said.  One side

09:45:05 19 wants information, the other side doesn't want information,

09:45:08 20 and I would rather just ask, why do you need it, why don't you

09:45:13 21 want to give it.  So I would like to do that now.

09:45:18 22     So Mr. -- and is it Pine or Klein?

09:45:23 23     MR. PINE:  It is Pine, Your Honor.  And if I could

09:45:25 24 respond.

09:45:28 25     Yes, in the response I indicated -- I didn't mean to

09:45:34  1   say we didn't meet and confer, I meant we didn't meet and

09:45:37  2   confer on a briefing schedule.  We made it very clear to

09:45:41  3   plaintiff's counsel that we intended to oppose.  They filed a

09:45:44  4   20 page motion.

09:45:45  5          I understand Your Honor would like to get to the

09:45:48  6   substance today.  We would really like to file a response

09:45:54  7   brief, because there is a lot of -- it is a lengthy motion and

09:45:59  8   it included a lot of superfluous matter, but I would like to

09:46:04  9   bring a couple things to the Court's attention before we even

09:46:07  10  get to the substance of it, although some of it is

09:46:09  11  substantively related.

09:46:11  12         But on October 31st, 2023, Your Honor, defendant

09:46:14  13  voluntarily dismissed the counterclaims for economic strategic

09:46:19  14  reasons, including to narrow the remaining issues in this

09:46:22  15  case, to lower the costs of the ongoing litigation.

09:46:25  16         Defendant's counterclaims involved defamation claims

09:46:27  17  against plaintiff for public statements plaintiff made calling

09:46:30  18  the defendant among other things a predator and claiming that

09:46:34  19  he was sexually inappropriate with underaged female fans.

09:46:37  20         So while those counterclaims were pending, it made

09:46:40  21  sense for plaintiff to conduct discovery related to

09:46:43  22  defendant's accusers to try to prove through plaintiff's

09:46:45  23  offending statements as part of its affirmative defenses.

09:46:49  24         However, despite the voluntary dismissal of

09:46:56  25  defendant's counterclaims eliminating any need to --

09:46:56 1          THE COURT: Mr. Pine? Mr. Pine?

09:46:56 2          MR. PINE: Yes.

09:46:58 3          THE COURT: Can you please slow down for the benefit

09:47:00 4 of my court reporter? Thank you.

09:47:03 5          MR. PINE: Oh, I apologize, Your Honor.

09:47:05 6          I was saying, despite the voluntary dismissal of

09:47:09 7 defendant's counterclaims eliminating any need for plaintiff

09:47:13 8 to prove the truth of misstatements, plaintiff wants to

09:47:16 9 continue pursuing discovery that is just no longer necessary,

09:47:19 10 which is not relevant to any material issues remaining in the

09:47:22 11 case.

09:47:22 12          The reason for this now appears to be for pure PR

09:47:27 13 purposes and to continue to make this litigation as expensive

09:47:30 14 as possible for defendant.

09:47:31 15          And I want to make something known to Your Honor.

09:47:35 16 You know, looking at the motion, the subject of plaintiff's

09:47:38 17 motion to compel is defendant's responses to five requests for

09:47:42 18 admission from his first set of requests. That is it.

09:47:45 19 However, rather than just attach copies of the five requests

09:47:48 20 that are the subject of the motion, and defendant's

09:47:51 21 objections and responses thereto, plaintiff chose to publicly

09:47:55 22 file with the Court a copy of defendant's responses to all 45

09:48:00 23 requests in plaintiff's first set of RFAs, 40 of which are

09:48:05 24 completely irrelevant to this motion, and defendant's

09:48:07 25 responses to 12 other requests for admissions in plaintiff's

second set, as well as defendant's responses to two special interrogatories.

I will note that in attaching the interrogatories, unlike the requests for admission, plaintiff chose not to attach defendant's complete set of responses, most likely because there are many responses that included information very damaging to plaintiff's case that he would not want to be made public.

Also, despite this not being a substanding (phonetic) or dispositive motion, plaintiff unnecessarily included a copy of a declaration from a woman living in Ireland who has made alleged claims of inappropriate conduct against defendant. There was absolutely no valid reason to include any of these additional items.

But the real reason became obvious to us last Friday when a YouTube trauma channel called TJV posted a five and a half hour video discussing plaintiff's motion in detail and dissecting it, including close-up screen shots of all of the exhibits, including the declaration and the responses, many of which as I said aren't even relevant to this motion. And to make matters worse, plaintiff himself appeared in the live stream for much of the video to essentially help egg on the crowd against our client.

Notably, plaintiff has appeared in videos hosted by this guy, TJV, and admitted in his responses to requests for

09:49:30　1　admission to sharing information with TJV about Mr. Smith.

09:49:30　2　TJV is merely --

09:49:38　3　　　　THE COURT:　Mr. Pine, how is any of this relevant to

09:49:41　4　whether your client is required to answer discovery propounded

09:49:44　5　by the plaintiff?

09:49:47　6　　　　MR. PINE:　Your Honor, it shows that plaintiff

09:49:50　7　included all of these unrelated -- he has included all of

09:49:54　8　these -- excuse me, discovery responses and an accuser's

09:49:58　9　declaration as a pseudo press release just to make them

09:50:02　10　public, and the fact that he wants to litigate this case in

09:50:06　11　the court of public opinion and on YouTube shows the true

09:50:08　12　reason he wants to continue to conduct discovery on issues

09:50:11　13　that are wholly irrelevant and solely related to defendant's

09:50:13　14　now dismissed counterclaims because of their salacious nature

09:50:16　15　and the opportunity it gives plaintiff to continue to use the

09:50:19　16　discovery process to invade defendant's privacy and try to dig

09:50:23　17　up dirt about him that he can then turn around and feed to TJV

09:50:28　18　and his contacts at other YouTube trauma channels which should

09:50:31　19　not be allowed.

09:50:32　20　　　　This is a clear abuse of process, Your Honor.　He is

09:50:35　21　just continuing to smear Mr. Smith and ruin his reputation

09:50:40　22　under the purview of the litigation privilege.

09:50:47　23　　　　THE COURT:　I thank you for the larger context, but

09:50:52　24　in my view, much of that is beyond the scope of the pending

09:50:56　25　motion before me, which is a motion to compel specific

discovery requests.

Now, if I were to tease things out of your presentation, it sounds like you might consider motions for protective orders, or something along those lines, to help narrow the plaintiff's ability to use various things, but I don't view it as directly relevant to the matters before me, which are specific discovery requests asking for specific information. So I would like to get to the merits of that, and we can do it one of two ways.

One, we can go through the requests at issue now. I will ask the plaintiff how is this relevant, I will ask you what are the objections, and I will rule on whether they need to be answered or not.

The other way to do it would be I would have the plaintiff create a chart, and in that chart he will list the request, and then there will be a column with the relevance, and then there will be a blank column that he will send to you and you will raise your objections, and then I can rule based on that. They are, again, specific discovery requests that I want to address sooner rather than later so that the case can continue moving forward.

With that framework, Mr. Goodman, how would you like to proceed?

MR. GOODMAN: We are fine to proceed today, Your Honor. Counsel has given notice of all of our arguments that

09:52:50  1   would basically be the column format, because in our motion we

09:52:54  2   break out why we argue that each one is specifically relevant,

09:52:58  3   the additional pages were just for background.

09:53:01  4          THE COURT:  And Mr. Pine, how would you like to

09:53:03  5   proceed?

09:53:05  6          MR. PINE:  I think it is fine if we proceed with your

09:53:09  7   first choice, Your Honor.

09:53:11  8          THE COURT:  Okay.

09:53:12  9          So the first one is request Number 5, Admit that you

09:53:16  10  created or at some point controlled the Twitter account at

09:53:22  11  Ryan8399 followed by 6 other digits.

09:53:25  12         How is that relevant, Mr. Goodman?

09:53:30  13         MR. GOODMAN:  So, Your Honor, the Ryan8399 account,

09:53:35  14  this account, which begins in a discussion on Page 8 of our

09:53:39  15  motion, this is a defamation case, this is solely relevant to

09:53:42  16  we are talking about our claims to defenses.  This is one of

09:53:45  17  the accounts that Smith used, the defendant Smith used, to

09:53:51  18  defame Mr. Lord.

09:53:53  19         And actually in their responses to the request we

09:53:56  20  include one of the subject posts by Ryan83.  It is a post that

09:54:02  21  appears in our motion on Page 10.  The post reads as follows,

09:54:06  22  I know why you didn't want to make this public @ohmwrecker.

09:54:12  23  @ohmwrecker is our client, being the plaintiff, it is his

09:54:15  24  handle for Twitter, and he also uses it for YouTube.  In that

09:54:21  25  picture it includes a particular video file.

09:54:26   1      We allege that what Smith was doing here, because he
09:54:29   2  also published other things accusing my client of filming
09:54:34   3  himself having sex with a minor, that Smith in this post was
09:54:37   4  claiming that that allegation was true and that Smith actually
09:54:40   5  had video proof of it, Here, see my desktop computer of it.
09:54:44   6      Now, in their responses to this specific request, we
09:54:48   7  actually -- in the second production, excuse me, we asked a
09:54:53   8  little bit of a different question.  We said, Please admit
09:54:57   9  that you made this post.  And to that, they actually
09:55:03  10  responded, Well, I can't admit that I made this exact post,
09:55:07  11  the exact genuineness of it, but Smith admits that he made a
09:55:12  12  post roughly similar to this, and that is in his responses to
09:55:17  13  request to admit 2.
09:55:20  14      Again, this is a defamation case.  We, of course,
09:55:23  15  think that we are entitled to know any specific Twitter
09:55:27  16  account and email account that belongs to Smith, especially
09:55:30  17  ones that he used to defame my client.  We don't really know
09:55:37  18  why we are filing a motion about this, but that is all we have
09:55:40  19  to say about the Ryan83 account, Your Honor.
09:55:42  20      THE COURT:  Okay.
09:55:43  21      Response?
09:55:43  22      MR. PINE:  Yes, Your Honor.
09:55:44  23      First of all, and I think Numbers 5 and 7 might be
09:55:50  24  able to be handled -- well, we can take them one at a time,
09:55:54  25  that is fine.

09:55:56  1    The relevance -- this isn't a -- our response on this
09:56:00  2  one was not -- I mean, we have a general objection in there to
09:56:06  3  relevancy, but we responded to this, and Number 7, saying,
09:56:11  4  Pursuant to Rule 36(a)(4), which sets forth the answering
09:56:14  5  party may assert lack of knowledge or information as a reason
09:56:17  6  for failing to admit or deny if the party states it has made
09:56:23  7  reasonable inquiry and with the information it knows or can
09:56:27  8  readily obtain is insufficient to enable it to admit or deny.
09:56:29  9  That is a perfectly proper response to a request for
09:56:33  10  admission.
09:56:33  11    And if you would look at defendant's response to
09:56:37  12  Numbers 5 and 7, he says, Following reasonable inquiry and
09:56:42  13  investigation, information known or readily available to
09:56:45  14  defendant is insufficient to enable defendant to admit or deny
09:56:48  15  this request.  That is right in line, perfectly in line, with
09:56:52  16  Rule 36(a)(4), and that is exactly what the defendant has
09:56:57  17  done.
09:56:57  18    Plaintiff's argument is simply that he does not
09:57:00  19  believe defendant, which is too bad.  That is not how things
09:57:03  20  work in responding to written discovery.
09:57:06  21    As plaintiff is well aware, Mr. Smith was permanently
09:57:09  22  suspended from Twitter years ago and no longer has access to
09:57:12  23  any of his prior accounts.  As a result of this suspension,
09:57:15  24  Mr. Smith has no ability to access his Twitter archives.
09:57:20  25  Also, as plaintiff is aware, over the many years when

09:57:23  1   Mr. Smith was on Twitter he utilized numerous accounts and he

09:57:27  2   does not have specific recollection of each one.  Some of them

09:57:30  3   were used for a short time, some for a long time.  And he

09:57:33  4   doesn't recall the specifics.  He has answered to the best of

09:57:37  5   his ability.

09:57:39  6        The fact that plaintiff just doesn't want to believe

09:57:41  7   his response, that doesn't make it improper, Your Honor.

09:57:45  8        THE COURT:  So one of the concerns I have -- like I

09:57:48  9   appreciate the arguments, let me tell you how I understand

09:57:53  10  them.

09:57:53  11       Plaintiff is saying, there is a post, and the post is

09:57:56  12  essentially a veiled threat, look what I have and I am going

09:58:00  13  to expose.  Not your words, my words, but that is the gist of

09:58:05  14  the post and perhaps the relevance to the plaintiffs's case.

09:58:08  15       Your response is initially, I don't have enough

09:58:11  16  information.  In the second set you said okay, we did

09:58:14  17  something like that, but because I can't access Twitter, I

09:58:18  18  don't know if that is the exact post I posted.

09:58:21  19       Is that fair, Mr. Goodman, on your piece?

09:58:25  20       MR. GOODMAN:  That is correct, Your Honor.  I do of

09:58:27  21  course have a response, but I will hold off.

09:58:29  22       THE COURT:  And Mr. Pine, am I correct essentially on

09:58:32  23  the response?

09:58:33  24       MR. PINE:  Yes, Your Honor.

09:58:34  25       THE COURT:  All right.

09:58:35 1          So the concern I have is when I look at the response,
09:58:42 2   it says, defendant admits making a post similar to the one
09:58:45 3   pictured above but cannot admit the exact genuineness of the
09:58:50 4   pictured post, which is largely illegible.
09:58:53 5          I can make out the whole post, so I don't see it
09:58:56 6   being largely illegible.  So I understand your appeal to the
09:59:02 7   rules, but you are going a step too far by saying it is
09:59:06 8   largely illegible.
09:59:08 9          Looking at request Number 1, second set, Page 4, the
09:59:12 10  post says, Ryan83, and has the handle, then reads, I know why
09:59:16 11  you didn't want this public @ohmwrecker, and two whales, then
09:59:22 12  there is a screen shot that says, VLC, media player, then next
09:59:29 13  to it, mystic.tamp, and then perhaps some text that if I took
09:59:31 14  my glasses off and squinted I would see.  So I see nothing
09:59:36 15  illegible about it.
09:59:40 16         I bring that up only to say I think some of your
09:59:44 17  objections are not well-founded.
09:59:49 18         MR. PINE:  The illegible, Your Honor, was as to what
09:59:53 19  was shown on the little screen, which I find difficult to make
09:59:56 20  out, and I don't see that it says anything in there that -- I
10:00:00 21  understand what you are saying, and I can -- it wasn't
10:00:03 22  illegible as to the other wording, but I don't see anything on
10:00:09 23  the screen that says -- what makes out this -- makes it clear
10:00:15 24  what this even is.
10:00:17 25         THE COURT:  So you are saying that the largely

illegible refers to the image that would be in the file on the right shown in this post?

     MR. PINE:  And the words underneath, the images on this screen shot.

     THE COURT:  Okay.

     MR. PINE:  And I guess illegible may not have been -- to me it -- it doesn't mean anything.  It doesn't show what -- what it has been alleged to be.  I don't understand from looking at that screen shot what -- he is saying that this is what he thinks the post is saying, but I don't know that that is what it says.  Illegible may not have been the right term. I can read the words out but they seem meaningless, mystic, tamp, LE, dibs, X, I don't know what that means.

     THE COURT:  Okay.

     With respect to request Number 5, I am going to deny the motion to -- let me ask Mr. Goodman first.

     Do you agree that Number 5 relates to the second set, request Number 1?

     MR. GOODMAN:  Request Number 5, concerning the Ryan83 account, the question is if it relates to -- I'm sorry?

     Can you direct me where you are in the exhibits?  Are you saying it refers to second set, Number 1?  Let me just check.

     THE COURT:  Well, let me take that back.  I will take that back.  All right.

10:02:04    1    So looking at request Number 5 from I think it is

10:02:08    2    Exhibit A, this is simply, Admit that you created or, at some

10:02:11    3    point, controlled the Twitter account @Ryan8399330784.  I find

10:02:20    4    that the response to the second set of interrogatories -- or I

10:02:26    5    do not find it credible that your client does not recall,

10:02:33    6    Mr. Pine, whether he created or controlled a particular

10:02:36    7    Twitter account.  I am ordering that he answer that.  And if

10:02:50    8    he persists that his answer is that he doesn't know, he should

10:02:54    9    state that.

10:02:59    10    Let's see, what is the next one, Number 7?

10:03:02    11    MR. GOODMAN:  Yes, Your Honor.

10:03:03    12    THE COURT:  Admit that you created or at some point

10:03:06    13    controlled the Twitter account @harpyrae.

10:03:12    14    How is that relevant, Mr. Goodman?

10:03:14    15    MR. GOODMAN:  Yes, Your Honor.

10:03:16    16    So the harpyrae account, this was used to send

10:03:20    17    direct messages to the affiant whose affidavit we attached, or

10:03:26    18    the redacted copy of course, to the motion, and the purpose of

10:03:31    19    that was to show that she interpreted these messages from

10:03:36    20    @harpyrae to be threatening to her.

10:03:39    21    The reason why this whole sequence is relevant is

10:03:43    22    because specifically Lord -- not only is this a defamation

10:03:46    23    case, Lord alleged actual malice in Paragraph 54 of the

10:03:50    24    complaint, and he specifically seeks punitive damages in

10:03:54    25    Paragraphs 83 and 87.

10:03:56    1        So with both of those we have to show -- and Smith

10:03:59    2   denies that the comments were made with actual malice, he of

10:04:03    3   course denies that this is defamation.  So specifically what

10:04:05    4   we need to show is why Smith made the comments that he did.

10:04:11    5        In our complaint we specifically outline that the

10:04:13    6   entire purpose that Smith defamed Lord was because Lord was

10:04:20    7   publicly outing Smith as this alleged -- as having done these

10:04:24    8   alleged acts, being allegedly inappropriate with minors.  That

10:04:28    9   is the whole thing.  And specifically, we argued that he used

10:04:33   10   the harpyrae account.

10:04:34   11        But what happened is one of the affiants who my

10:04:36   12   client actually interviewed on YouTube, she -- this is of

10:04:41   13   course before the case -- she made a post on Instagram on --

10:04:45   14   on Twitter, excuse me, on June 9, 2021, in which she kind of

10:04:54   15   obscurely using an Irish kind of slang term referred to Smith

10:04:55   16   as someone who is inappropriately attracted to children.  Mere

10:04:59   17   hours later she received a message from this harpyrae account

10:05:03   18   with gun emojis, mentioning her daughter's name by name, and

10:05:09   19   mentioning another one of her family members by name, and kind

10:05:12   20   of saying, it will happen, and posting publicly everybody to

10:05:15   21   that.

10:05:16   22        THE COURT:  Okay.

10:05:17   23        So this account was used to send threatening messages

10:05:22   24   to a witness in the case?

10:05:23   25        MR. GOODMAN:  That is correct, Your Honor.

10:05:25 1    And also I would just add that Smith had admitted
10:05:28 2    already in different requests to creating different email
10:05:31 3    accounts and different Twitter accounts specifically for the
10:05:35 4    purpose of defaming Lord.  We are arguing that this is, of
10:05:41 5    course, relevant because he essentially was trying to silence
10:05:43 6    this person.  The whole thing is about really who is telling
10:05:46 7    the truth.
10:05:47 8         THE COURT:  Right.
10:05:47 9         MR. GOODMAN:  Part of the defamatory speech, in
10:05:51 10   addition to Smith claiming that my client filmed himself
10:05:54 11   having sex with a minor, which of course is untrue, Smith also
10:05:57 12   went around and publicly and privately from these different
10:06:01 13   accounts, and we have shown evidence of this in our motion,
10:06:04 14   what he did was he said, All other creators out there, you
10:06:08 15   can't work with Lord.  If you work with my client what is
10:06:11 16   going to happen is he is going to make up lies about you too,
10:06:15 17   and he is --
10:06:15 18        THE COURT:  I understand.
10:06:16 19        Mr. Pine, what is your response?  What are your
10:06:20 20   objections to this?
10:06:21 21        MR. PINE:  Okay.  First of all, starting with he
10:06:25 22   claims that this is related to -- that this proves statements
10:06:32 23   that defendant --
10:06:33 24        I mean, first of all, we are talking about somebody
10:06:35 25   who is an accuser.  Those are the statements that are relevant

to Mr. Lord's statements -- I'm sorry, yes, Mr. Lord's
statements, that were the subject of the counterclaims, which
have now been dismissed.  As far as -- he is claiming that
they are relevant to disprove statements that defendant called
him a liar.

First, there is no claim in defendant's entire
complaint that he is suing defendant for defamation or false
light for calling plaintiff a liar.  In fact, I did a word
search and the word liar does not even appear once in the
entire complaint.

If you look at plaintiff's Paragraphs 75, 91, 102,
105, and 125, where he sets forth the basis for his defamation
and false light claims, not once does it say that he is suing
my client for calling him a liar.  And second, calling someone
a liar is generally considered a statement of opinion and is
not necessarily defamation.

This one single Twitter post from May 23, 2021, that
is mentioned in the motion, that was well before any of the
accusers came forward.  So it clearly was not -- that
statement was clearly not in reference to any statements made
by plaintiff in connection with the accusers referenced in his
discovery request.

So as plaintiff is aware, that specific post was made
right after in reference to plaintiff appearing in a 17 minute
YouTube video on a channel known as trauma alert where he made

numerous statements about not only Mr. Smith, but multiple other gamers. So that general statement that he lies, which was in a Twitter post, and again, not alleged in a complaint as being the basis for any defamation or false light claim, it is completely ambiguous what it is even referencing.

And as far as the argument that he needs this to prove malice, while looking at the case that -- that is not how you show actual malice for punitive damages. Looking at the Jacobson case that plaintiff cites to in his motion, to show actual malice the defendant must be shown to have coupled his rancor with a knowledge of the falsity of the statement complained of, or a reckless disregard as to its truth or falsity.

The statements complained of in this case are the statements allegedly made by Mr. Smith and complained of by plaintiff have nothing to do with proving the truth of plaintiff's statements against Mr. Smith, which are now irrelevant in light of the dismissal of the counterclaims.

If plaintiff's argument is to be accepted, the result is going to be that despite dismissing the counterclaims, defendant is still going to be forced to conduct all of the same discovery to prove the falsity of plaintiff's statements including -- you know, which is going to include having to go to the United Kingdom and Norway to depose these alleged accusers, which is completely absurd when the counterclaim has

10:09:41   1   been dismissed.

10:09:43   2           THE COURT:  Okay.

10:09:45   3           The bar for relevance is relatively low, it is just

10:09:53   4   whether it makes -- has the potential to make something true

10:09:59   5   or not true.  And so given what I understand of this case, I

10:10:04   6   understand the credibility of the various participants in the

10:10:08   7   case will be at the fore, and so any patterns or practices

10:10:13   8   that -- or conduct that is similar in kind or is reflective of

10:10:18   9   the character of the participants in the case would be -- or

10:10:24   10  could be relevant.  Therefore, I do find the request

10:10:27   11  appropriate.

10:10:29   12          Is the objection based entirely on relevance and

10:10:37   13  ability to recall whether the defendant created the account?

10:10:43   14          Mr. Pine?

10:10:44   15          MR. PINE:  For Number 7, yes, Your Honor.  I mean,

10:10:50   16  similarly as to Number -- as to Number 5, he responded

10:11:01   17  pursuant to Federal Rule 36, as we discussed before.

10:11:44   18          THE COURT:  I will ask both counsel if there is a

10:11:47   19  related or similar request concerning this Twitter account

10:11:53   20  that was asked about in any of the discovery in which the

10:11:58   21  defendant said something to the effect of, I can't confirm

10:12:05   22  that is the exact post, because it is -- but I have similar

10:12:09   23  posts, or whatever was the response to the request, to the

10:12:16   24  RFA?

10:12:17   25          Mr. Goodman, can you --

10:12:18  1    MR. PINE:  There is not, Your Honor.

10:12:20  2    THE COURT:  Mr. Goodman?

10:12:22  3    MR. GOODMAN:  I want to make sure I understand the

10:12:24  4  question, I'm sorry, Your Honor.

10:12:24  5    Are you asking if there are any other requests to

10:12:27  6  which they said that they can't admit or deny because they are

10:12:31  7  just not sure?

10:12:32  8    THE COURT:  I will ask a better question.

10:12:34  9    For Ryan8399, and the first set of RFAs, the

10:12:39  10  defendant said, I can't answer that because -- essentially I

10:12:42  11  can't recall the exact language.  Following a reasonable

10:12:47  12  inquiry and investigation the information known or readily

10:12:50  13  available to defendant is insufficient to enable defendant to

10:12:53  14  admit or deny this request, 4 to RFA Set 2, and he says, I

10:13:00  15  can't say that is the post that I posted, but I have posted

10:13:03  16  something similar.

10:13:04  17    Are there any responses in that vein concerning the

10:13:09  18  Twitter account harpyrae?

10:13:13  19    MR. GOODMAN:  So I guess the simple answer is no.

10:13:16  20  However, the request -- the response to 7 originally read,

10:13:21  21  Following a reasonable inquiry investigation -- and this is

10:13:23  22  the same as basically for Ryan83, the information known or

10:13:27  23  readily available to the defendant is insufficient to enable

10:13:29  24  defendant to admit or deny this request.  That was concerning

10:13:34  25  harpyrae.

And then in request Number 8 we said, Admit that no one had access to this account except you, and he said again that he couldn't answer that, which again has already been ruled on.

I don't think there has been another specific response from them that was similar to the Ryan83, that particular post, but I guess the reason why we brought this motion with respect to these five is we think your ruling here will significantly clear up these matters as to kind of what is relevant, what is not, and so we can kind of move forward.

If we find something we have to bring another motion about, we can, but we just wanted to focus on these five and hope that the parties can kind of work it out, given your rulings on these five, which I think we will be able to do.

THE COURT: Okay. I will deny the motion with respect to request Number 7. The reason for the denial is these are the defendant's answers. It says he doesn't have sufficient information to answer them. And so he stands by that. Through your other work if you find ways to undermine that answer, that is your prerogative.

MR. GOODMAN: If I may, real quick, Your Honor. We actually did.

So what we did is we sent over to them in our meet and confer letters, which we attached to the motion. We also

10:14:52  1    included in our motion the very simple help pages that Twitter
10:14:55  2    has.
10:14:56  3            Basically, as of course both of our clients know,
10:14:59  4    both of our clients are incredibly tech savvy, when you make a
10:15:03  5    Twitter account you have to use an email address usually and
10:15:06  6    they email you and say, Hi, welcome to Twitter, user harpyrae,
10:15:12  7    or whatever you may be, here you go, welcome to Twitter, here
10:15:16  8    are the basics, if you need any help, reach out.  Then they
10:15:18  9    send you notifications and emails about, Oh, you received a
10:15:21  10   new direct message, things like that.
10:15:23  11           So we said what they need to be able to do is
10:15:25  12   basically Smith claims, because his accounts are suspended, he
10:15:29  13   is unable, he has no knowledge of the accounts.  We say,
10:15:33  14   number one, and this was included in our meet and confer with
10:15:37  15   opposing counsel, he is required to check his registration
10:15:41  16   email, his actual email address, for any email he has
10:15:45  17   concerning raeharpy, because if he has an email about the
10:15:48  18   raeharpy account, it is his.  So his answer that he can't
10:15:51  19   answer or deny it, he is required to actually conduct a
10:15:55  20   thorough search.
10:15:56  21           And I will --
10:15:56  22           THE COURT:  I will stop you there.
10:15:58  23           I would imagine there is also a request for
10:16:01  24   production saying, Give me all emails related to this Twitter
10:16:05  25   account, and I don't see how that is the purview of a motion

to compel, request to admit, at this point, in the sense that I understand what you want to do, but I can't make him say, yes, I remember, and this is the answer.

So this becomes a matter for later litigation, which is, you know, you were asked to admit certain things, you couldn't answer. What about this? That is not this phase of the case. His answers are his answers. On that first one it just so happens that they are inconsistent answers. So I am ordering the defendant to re-assess or to supplement RFA Number 5 in light of the other answer that was given.

Again, this is -- I think this is essentially -- this will come down to credibility issues later in the case. Their answers are their answers. That is why my -- that is why I am denying it with respect to 7.

MR. GOODMAN: Understood.

Very briefly, and I do you not mean to belabor this point, I want to add just a new piece.

What we have here, Your Honor, is a YouTube comment that is written by the defendant Smith where he specifically says that he can see which of his Twitter accounts were banned, which ones were permanent, and which ones were just temporarily banned. He writes, I was banned because of the Kiwi pages, and I know it because I can see which account is permanent and which one isn't.

So their counsel's claim that he can't admit or deny

this, and then also they are not required to show, Well, did you actually conduct a thorough search, did you look at these emails, I sent him the specific way that he needs to look at this, and to say, Well, he doesn't need to do this, if I do a document request to him he is going to say, Well, I don't have it.

When is the time when we can require him to produce evidence to us by email or otherwise that I conducted a thorough search for all of my email accounts and I do not have anything concerning raeharpy? So I am answering this that I can neither admit or deny this and I am doing it within the Federal Rules. Because right now he seems to just be saying, I was suspended, throwing up my hands. And I am saying, I am supplying you with tools that I believe under the rules you are required to actually search.

It is the same thing as asking me what is my Twitter account, and I answer, I don't know, I never use Twitter. Technically I have an account but I can't tell you the username offhand. I have to go into the account. I have to go into my email. He has to do the same thing. That is all we are asking him to do. Again, it is a defamation case where we are saying, tell me which accounts are yours.

THE COURT: Which I think is fine with respect to requests for documents, and even for interrogatories, but for requests to admit, your -- these are -- the problem -- the

10:19:18  1  position I feel your motion is putting me in is to make

10:19:23  2  findings based on other evidence as to what his answers for

10:19:27  3  requests to admit should be, and I can't do that, because his

10:19:32  4  answers are his answers, and whether they are truthful or not,

10:19:36  5  that is for a fact finder to evaluate whether it is accurate.

10:19:41  6  And so that is why I distinguish the request for production

10:19:45  7  because I can say, No, go find these documents, but I can't

10:19:49  8  say, Say this, and that is -- yes.

10:19:54  9      So I have to deny the motion to compel with respect

10:19:57  10  to 7.

10:19:58  11      MR. GOODMAN:  I understand.

10:20:01  12      Moving on from this point to --

10:20:02  13      THE COURT:  I am moving on to Number 31, request to

10:20:06  14  admit Number 31.

10:20:13  15      Now it reads, Admit that in May of 2021 you received

10:20:17  16  the email below, which purported to be from, redacted, from

10:20:22  17  the email account, redacted.

10:20:31  18      The answer, after objections, is, Following a

10:20:34  19  reasonable inquiry and investigation, the information known or

10:20:38  20  readily available to defendant is insufficient to enable

10:20:42  21  defendant to admit or deny this request.

10:20:46  22      How is this email relevant in three sentences?

10:20:51  23      MR. GOODMAN:  The email is specifically relevant

10:20:57  24  because the woman here is one of the affiants who accused

10:21:04  25  Smith of this conduct.  Smith then turned around, so we

allege, copied the email address, only changing one of the numbers, and used that as referenced in Number 33, immediately after receiving the email referenced in 31, to email my client directly.

THE COURT:  Okay.

MR. GOODMAN:  Emailed my client directly also saying -- in a way saying, that we argue, was supposed to make my client not believe that this person, that this woman, was real.

THE COURT:  Okay.

I am going to deny the motion to compel request Number 31 for the same reasons as before with respect to request 7.  Here it is seeking an admission that he received a particular email.  He may not have a recollection of that. You just gave the example of, I have a Twitter account but I don't use it, I may not know my handle.  If that is his answer, that is his answer.  He can stick by that.  You have the option to craft other requests that perhaps are a bit more targeted to get to that information.

Moving on to request Number 32, that one says, Admit that you created or at some point controlled the email account, redacted.

After the standard -- or the form objections, the objection is, Defendant objects to this request to the extent that it seeks the disclosure of information that is neither

relevant to any of the claims or counterclaims in this case nor reasonably calculated to lead to the discovery of admissible evidence.

Mr. Pine, can you elaborate on that objection?

MR. PINE: Well, Your Honor, I would like to point out that we did supplement this request and the supplemental response objected to the fact that this -- after we met and conferred, that this is solely related to -- as counsel stated, this Ms. Armstrong is one of the accusers of who -- which was the basis for the counterclaims against plaintiff, which now has been dismissed.

So trying to make connections between these accusers and defendant, plaintiff is no longer required to prove the truth of the statements that he made. There is no more defamation claims pending against plaintiff. But he wants to continue to try to prove things that are no longer necessary. He doesn't want to take yes for an answer, that this issue is over. The counterclaim has been dismissed. There is absolutely no reason to continue on with this line of discovery.

In the supplemental response we said to the extent that it was ever relevant that it is certainly not relevant given the dismissal of the counterclaim.

Sorry, I am trying to flip through to find the --

THE COURT: I understand you keep referring to the

| | |
|---|---|
| 10:24:38 | 1 |
| 10:24:42 | 2 |
| 10:24:46 | 3 |
| 10:24:48 | 4 |
| 10:24:52 | 5 |
| 10:24:55 | 6 |
| 10:24:59 | 7 |
| 10:25:02 | 8 |
| 10:25:04 | 9 |
| 10:25:08 | 10 |
| 10:25:14 | 11 |
| 10:25:20 | 12 |
| 10:25:21 | 13 |
| 10:25:24 | 14 |
| 10:25:28 | 15 |
| 10:25:28 | 16 |
| 10:25:34 | 17 |
| 10:25:37 | 18 |
| 10:25:43 | 19 |
| 10:25:47 | 20 |
| 10:25:50 | 21 |
| 10:25:55 | 22 |
| 10:25:58 | 23 |
| 10:26:09 | 24 |
| 10:26:15 | 25 |

counterclaims are gone, but the counterclaims had to in some way be related to the actual claims. So the fact that -- I don't think you have a leg to stand on when you argue that it was the counterclaims, and now the counterclaims are gone, it is no longer relevant, because there was some relation between the two, and given the low threshold for what becomes discoverable, I find that it is relevant and you need to respond to Number 32.

So I will grant the motion with respect to RFA Number 32. And also I will grant it to RFA Number 33 for the same reasons. The objections are overruled.

MR. GOODMAN: Thank you, Your Honor.

One additional matter, I believe which relates to a previous question you asked, if I may.

THE COURT: Yes.

MR. GOODMAN: You had asked earlier if -- with respect to the Ryan83 account if there were any others in the second set of requests that responded in a similar way, and perhaps if Your Honor would prefer, I can bring a similar motion concerning these. I did attach them as Exhibit D.

But for example, which is a little bit different from asking them to admit -- like the ones that you denied, however, for example in -- it is Exhibit D, we ask things like, 12, they include a relevance -- they include a specific relevance objection. It continues kind of throughout the

10:26:19 1  second set.

10:26:20 2  I guess I would propose that I could just simply

10:26:24 3  bring a motion concerning those specifically. Would that be

10:26:27 4  preferable or --

10:26:29 5  THE COURT: Well, my question was concerning the

10:26:35 6  harpyrae account.

10:26:36 7  MR. GOODMAN: So with relation to those, I asked him

10:26:39 8  in, for example, Number 11, Admit that at some point you

10:26:42 9  direct messaged a redacted Twitter account from any account

10:26:47 10  other than yours, and that redacted Twitter account is the

10:26:51 11  exact same one that was the direct messages that raeharpy sent

10:26:51 12  to.

10:26:56 13  And to respond to that, he says, This is only

10:27:00 14  relevant to the counterclaim, and -- and yes, it seeks

10:27:07 15  information solely related or relevant to the now dismissed

10:27:10 16  counterclaim or any affirmative defense. And so they don't

10:27:13 17  provide a response. It is not a, We have searched and can't

10:27:18 18  respond, it is that same relevance objection.

10:27:21 19  THE COURT: Okay.

10:27:22 20  MR. GOODMAN: And it kind of goes throughout.

10:27:24 21  So, I guess, how would Your Honor like us to address

10:27:28 22  that?

10:27:28 23  THE COURT: I will address it now.

10:27:30 24  Mr. Pine, the objection that it was related to

10:27:33 25  counterclaims, if that is the sole basis, that objection is

10:27:37 1   overruled and you need to re-visit your discovery request, or

10:27:41 2   your answers to the discovery and answer those questions.  If

10:27:44 3   you have new objections, feel free to raise them, but the fact

10:27:47 4   that it was related -- merely related to a counterclaim, that

10:27:53 5   won't fly.

10:27:57 6          MR. GOODMAN:  We have nothing further, Your Honor.

10:27:59 7          Thank you.

10:27:59 8          THE COURT:  And anything I can address for you,

10:28:04 9   Mr. Pine?

10:28:04 10         MR. PINE:  Not at this time, thank you.

10:28:06 11         THE COURT:  Thank you both.

10:28:08 12

13          (Proceedings concluded.)

14

15

16

17                C E R T I F I C A T E

18

19          I certify that the foregoing is a correct transcript

20   from the record of proceedings in the above-entitled matter.

21

22   /s/Krista Burgeson, CSR, RMR, CRR      January 8, 2024
     Federal Official Court Reporter       Date
23

24

25